SUPERINTENDENT OF INSURANCE, ADOPTION OF RULES & REGULATIONS, IN RE.

Common Pleas Court, Franklin County.

No. 208505.  Decided February 28, 1961.

16

*Mr. Frank V. Opaskar*, for appellants.

*Mr. Mark McElroy*, attorney general, *Mr. Gerald J. Cele-brezze*, assistant attorney general, for appellee.

SATER, J. On November 11, 1959, there became effective Chapter 3951, Revised Code. This chapter is administered by the Superintendent of Insurance for the State of Ohio, and it relates to the duties, functions, obligations and licensing of public insurance adjusters and public insurance adjusters' agents.

Not long after that date the Superintendent drafted the rule which is the subject of this appeal and which is intended to regulate and control some of the duties, functions and obligations of such adjusters and their agents; five reasons for the rule are set forth in the preamble thereto. A public hearing date was set for June 13, 1960, and notice by publication was made in newspapers in Cleveland, Cincinnati, Youngstown, Columbus and Toledo, Ohio. Further, copies of the rule were mailed to the affected adjusters, and other copies were available in the Insurance Department for public examination and use. A full day's hearing was had on that date with proponents and opponents to the rule present and testifying before the Superintendent. After the hearing the rule was modified in some respects and, as modified, was filed with the Secretary of State.

From the adoption and promulgation of that rule, six individuals and companies filed this appeal. It is interesting to note that the names of three of these appellants are Atkin Construction Company, W. A. McCoy Construction Company and Superior Tile and Cabinet Company - - strange names, indeed, for public insurance adjusters or their agents. The appeal was heard on the record made before the Superintendent. Oral arguments were had, briefs were submitted, and the case was taken under advisement. On full consideration of the statutes involved, the transcript of the testimony referred to above, the briefs and oral argument, the appeal is dismissed.

There is ample authority by Sections 3951.03 and 3951.04, Revised Code, to foundation the promulgation of this rule. Furthermore, in promulgating this rule and in all of the procedural steps thereto, the Superintendent complied strictly and fully with the requirements of our Administrative Procedure Act. The rule is reasonable and lawful, both procedurally and substantially. Under his statutorily delegated powers, the Superintendent did in detail only what the Legislature itself could have done if it had so chosen to do; for the legislative process, at least equally with the judicial, there is an indeterminate penumbra within which choice is uncontrolled. *Dayton P. & L. Co.* v. *P. U. C. O.*, 292 U. S., 290, 78 L. ed., 1267.

We may not assume either that the Superintendent promulgated this rule simply to kill idle time that lay heavy on his hands or that public insurance adjusters and their agents are in business only for their health or for purely altruistic motives. The record is replete with substantive, reliable, probative evidence supporting the promulgation of this rule.

The purpose of the rule is to protect the public and also to halt public insurance adjusters, and their agents, from serving two masters—the insured, and the construction contractor (see Exhibit A) with whom they are all too frequently allied. Opposition to the rule is based primarily, if not solely, on the rather startling assumptions that an insured is unable to fend for himself with his insurer and that no one can adequately guard his rights except an adjuster—contractor - - - for a fee, of course, that may run as high as ten percent of the loss recovered, plus possibly a profit on the contract to repair, plus also the contractor's right to a mechanic's lien for work done and materials supplied under an entirely separate chapter of the Revised Code. In the public interest, this rule curtails this benevolent middleman; and well it does so in view of the uncontroverted testimony of the existence of "black sheep" in the opponents' fold.

It is not in the public interest for such adjusters to arrive at the scene of the loss before the fire engines have left, and while the insured may still be emotionally upset to waive an Exhibit A, with a pen, under his nose. Nor is it in the public interest for these adjusters to move in on the insured before the State Fire Marshal or other public official has completed

18

his work. Nor is it in the public interest for the adjuster-contractor to fit the cost (less all deductions including at times the adjuster's fee) and amount of work to the amount recoverable from the insurer payable all too frequently jointly to the insured and the adjuster or contractor. It is not in the public interest for the adjuster to get to the scene of loss so quickly as to eliminate competitive bids to the insured. Nor is it in the public interest for a contractor to refuse to repair unless it also adjusts. Here with a vengeance is how adjustment and contracting go statedly "hand in hand" but neither hand is that of insured or insurer; further it could mean higher premiums and higher costs.

We can accept no part of appellants' case, oral or written. Parts, also, of the brief of the Attorney General may arise some time in the future to haunt him. However, since no federal question has been properly reserved by appellants, we stand on the foregoing. Submit entry accordingly.